IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
NO.: 5:12-CV-00787-FL

| | |
|---|---|
| JONATHAN JERMAIRE JONES, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

This matter comes before the court on the parties' cross motions for judgment on the pleadings (DES 26, 28). The time for filing any responses or replies has expired and the motions are now ripe for adjudication. Pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation. For the following reasons, it is RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings (DE 26) be DENIED, that the Defendant's Motion for Judgment on the Pleadings (DE 28) be GRANTED and that the Commissioner's final decision be affirmed.

**I. STATEMENT OF THE CASE**

Plaintiff protectively filed an application for supplemental security income and disability insurance benefits on October 15, 2009, alleging a disability beginning on March 28, 2006. The application was denied initially and upon reconsideration. A hearing was held before an Administrative Law Judge ("ALJ") who, in a decision dated November 18, 2011, determined that plaintiff was not disabled during the relevant time period. On October 10, 2012, the Appeals Council denied plaintiff's request for review of the ALJ decision, making the ALJ's decision the

final determination. Plaintiff filed this action on December 10, 2012, for review of the final decision of the Commissioner.

## II. STANDARD OF REVIEW

This Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g), which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . .

42 U.S.C. § 405(g).

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they are supported by substantial evidence and were reached through application of the correct legal standard." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "In reviewing for substantial evidence, . . . [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute . . . [its] judgment for that of the Secretary." *Craig*, 76 F.3d at 589. Thus, this Court's review is limited to determining whether Defendant's finding that Plaintiff was not disabled is "supported by substantial evidence and whether the correct law was applied." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

2

**III. ANALYSIS**

The Social Security Administration has promulgated the following regulations which establish a sequential evaluation process that must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f).

*Mastro v. Apfel*, 270 F.3d 171, 177 (4th Cir. 2001).

The ALJ followed the sequential evaluation in this case. At step one, the ALJ found that plaintiff had not engaged in gainful employment since the alleged onset date At step two, the ALJ found that plaintiff had the following severe impairments: status post-aneurysm; seizure disorder; cognitive disorder; and mood disorder. However, at step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: he should avoid even moderate exposure to hazards, no balancing and no driving an automobile. The RFC also specified that Plaintiff is capable of performing simple, routine, repetitive tasks and can maintain concentration for two-hour intervals, with only routine changes and a non-production work

3

setting. At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. At step five, the ALJ determined that plaintiff could adjust to the demands of other employment opportunities existing in significant numbers in the national economy. Accordingly, the ALJ determined that plaintiff was not under a disability during the relevant time period.

Plaintiff's contends presently that the ALJ made several errors, including: failing to consider evidence of two brain surgeries; failing to properly weigh the medical opinions; failing to find that he met Listing 12.02; finding Plaintiff capable of performing the jobs identified by the VE; misrepresenting Plaintiff's activities of daily living; and failing to consider the opinion of Plaintiff's employer.

*A. Additional evidence from Duke Medical Center*

Plaintiff contends that he submitted additional evidence, consisting of several hundred pages of medical records from Duke Medical Center, but that the ALJ did not consider it. These medical records include documentation relating to his two brain surgeries and his initial recovery period. However, as noted by the Defendant, these records predate Plaintiff's alleged onset date. Moreover, while not specifically referenced in the ALJ's decision, it is nonetheless clear that the ALJ considered Plaintiff's surgeries inasmuch as he found Plaintiff's status post-aneurysm and the resulting seizure disorder to be severe impairments. Additionally, although the records include a May, 2004 report from a speech pathologist noting Plaintiff's language impairment, they also include notes that Plaintiff made a full recovery and that his speech, language and higher cortical functions were all normal. (Tr. 491). These latter findings support the ALJ's determination regarding Plaintiff's functional abilities.

4

Inasmuch as it is apparent that the ALJ considered Plaintiff's brain surgeries and his subsequent recovery, Plaintiff's argument that the ALJ disregarded the records from Duke Medical Center is without merit.

*B. Third party statement by Newell*

Plaintiff next argues that the ALJ failed to consider the affidavit submitted by Paula Newell, his aunt, who was employed by the laboratory at Duke Medical Center. The affidavit states, *inter alia.*, that Newell observed the matter removed from Plaintiff's brain, that the mass was the approximate size of two golf balls and that it was attached to his speech palate. However, this statement is limited to circumstances surrounding Plaintiff's 2004 brain surgery which, as noted above, was acknowledged by the ALJ. Accordingly, what value, if any, the affidavit provides is unclear. As Plaintiff has failed to demonstrate the relevance of the affidavit and/or a legal basis demonstrating how the ALJ erred when considering it, this argument lacks merit.

*C. Weight of expert opinion's*

In assigning weight to any medical opinion, the ALJ must consider the following factors: (1) "[l]ength of treatment relationship;" (2) "[n]ature and extent of treatment relationship;" (3) degree of "supporting explanations for their opinions;" (4) consistency with the record; and (5) the specialization of the physician. 20 C.F.R. § 404.1527. Plaintiff contends that the ALJ improperly weighed the opinions of Dr. Ernest Akpaka, who performed a psychiatric consultive exam, and Dr. Thomas Bundick, who performed a neuropsychological evaluation, affording them only "some weight" and "little weight," respectively. Plaintiff asserts that both physicians confirmed the severe limitations of Plaintiff's cognitive functioning, and both issued reports that

5

"clearly establish disability."

Akpaka found that Plaintiff's symptoms significantly limited both his ability to perform tasks requiring sustained concentration and persistence and his ability to tolerate the stress of day-to-day work activity. However, the ALJ determined that Akpaka's findings were inconsistent with Plaintiff's GAF score of 62, which indicates only mild symptoms and Plaintiff's subsequent ability to hold a part-time job as a cashier. Accordingly, his opinions were afforded only some weight by the ALJ. Nonetheless, the ALJ credited Akpaka's opinions that Plaintiff had moderate limitations in concentration, persistence and pace and was limited to tasks requiring concentration for two-hour intervals, findings which were incorporated into Plaintiff's RFC.

Bundick found Plaintiff markedly limited in several functional areas. Specifically, Bundick found that Plaintiff was not employable, without significant supports; that he was markedly limited in his ability to perform at a consistent pace without several rest periods; and that he was unable to complete a normal workday or workweek. The ALJ determined that these findings were contradicted by Plaintiff's ability to hold a part-time job as a cashier, where he had only a 15 minute break every two hours. Bundick also found Plaintiff's motor skills were compromised by a lack of dexterity in his hands. Given his ability to operate a cash register, as well as his reported activities of playing video games and folding clothes, coupled with a physical exam showing full grip strength, suggest that his dexterity is not impaired to the degree Bundick found. These reasons supported the ALJ assigning his opinions little weight.

Accordingly, Plaintiff has failed to demonstrate that the ALJ improperly weighed the opinion evidence.

*D. Testimony by the VE*

Plaintiff next argues that, when posed hypothetical questions by Plaintiff's attorney, the VE testified that there were no jobs which Plaintiff was capable of performing. He maintains that the ALJ failed to consider this testimony.

In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record and it must be in response to proper hypothetical questions which fairly set out all of the claimant's impairments. *Walker v. Bowen*, 889 F.2d 47, 50–51 (4th Cir. 1989). A hypothetical question is proper if it adequately reflects a claimant's RFC for which the ALJ had sufficient evidence. *Johnson v. Barnhart*, 434 F.3d 650, 659 (4th Cir. 2005).

Plaintiff's counsel's hypothetical questions included the following limitations: an inability to sustain day-to-day work activity; limitations to a complete workday and/or a complete workweek; no stamina to work an eight hour day; and the need for frequent, unscheduled bathroom breaks. However, these limitations were not incorporated by the ALJ into Plaintiff's RFC and are based on evidence that the ALJ rejected. Accordingly, the VE's response to such hypothetical questions is of limited value, if any, and need not be considered. *See Martinez v. Heckler*, 807 F.2d 771, 774 (9th Cir. 1986) (noting that an ALJ is free to accept or reject restrictions included in hypothetical questions suggested by a claimant's counsel.). For this reason, the ALJ did not err in not considering the VE's testimony in response to hypothetical questions posed by Plaintiff's counsel.

7

*E. Listing 12.02*

Plaintiff submits that the ALJ erred in finding that Plaintiff did not meet Listing 12.02. Listing 12.02 requires a claimant to meet paragraph A and B criteria or, alternatively, to meet paragraph C criteria. The ALJ assessed Plaintiff's impairment under this Listing and concluded he failed to meet all of its requirements. Specifically, under paragraph B, the ALJ determined that he had mild restrictions in activities of daily living; no difficulties in social functioning; moderate difficulties in concentration, persistence and pace; and no episodes of decompensation, each of extended duration.

Plaintiff contends that he meets the Listing's paragraph B requirements because he has severe restrictions in activities of daily living. However, the ALJ noted that Plaintiff was able to wok part-time, care for his children, fold laundry and go shopping. Such activities do not support a finding of severe limitation in this functional area, as Plaintiff contends. Plaintiff also argues he has marked impairments in maintaining social functioning, asserting that he has no social life. However, inasmuch as he is able to take his children to the beach and interacts with the public at work, there is evidence to support the ALJ's finding that his social function is not limited as Plaintiff suggests.

Accordingly, having failed to demonstrate that he meets the requirements of paragraph B, Plaintiff has failed to establish that the ALJ erred in considering his impairments under Listing 12.02.

*F. Jobs identified by VE*

Plaintiff argues next that the jobs identified by the VE—linen room attendant, photocopy machine operator and surveillance system monitor—are positions he cannot perform. The linen

8

room attendant is classified as medium, which requires lifting up to 50 pounds, and it requires one to add, subtract, multiply and divide units of measure as well as to compute rate and percent and to read 190–215 words per minute. Plaintiff contends these requirements exceed his abilities, as he testified he can lift only about 30 pounds and he has difficulty with reading and math.

The photocopy machine operator also requires addition and subtraction, perform measurements and read 90–120 words per minute. The surveillance system monitor position requires one to add and subtract; perform measurements; read safety rules and instructions; write reports; and to speak before an audience. Plaintiff asserts these tasks are not within his abilities as he struggles with speech and communication and his father stated that he could no longer perform measurements for construction work. Moreover, he states that Bundick found his I.Q. was in the lowest 3–4% of the population and also determined that his dexterity was in the lowest 1%. Each of the jobs identified, he maintains, exclude the lowest 10% of the population in general learning, verbal aptitude and numerical aptitude, as well as the lowest 10% of the population in motor coordination, finger dexterity and manual dexterity.

As the Defendant points out, the alleged inability to perform these positions is based on Plaintiff's subjective allegation and Bundick's opinion, which the ALJ afforded only little weight. Moreover, there is evidence in the record of his ability to perform such jobs, including: his work as a cashier, which he reported he performs "pretty good," requires him to take orders, read a menu, make change and operate a cash register. Akpaka noted Plaintiff was able to perform simple calculations. Additionally, the medical records state that his speech and higher cortical functions were normal, and that his recovery from surgery was "remarkable." Notably,

9

since having his bran surgeries, Plaintiff was able to take and pass his GED. Such evidence supports a finding that he is capable of performing in these jobs and that his alleged impairments are not as limiting as he avers.

Inasmuch as there is substantial evidence to support the determination that Plaintiff is capable of performing the jobs identified by the VE, Plaintiff has failed to establish that the ALJ erred at step five.

### *H. Plaintiff's activities of daily living*

Plaintiff argues next that the ALJ mischaracterized Plaintiff's activities of daily living which, he submits, cannot be used to establish a lack of disability. However, such activities are relevant factors in assessing credibility and making a finding regarding disability. *See Worden v. Astrue*, No. 4:11-CV-88-D, 2012 WL 2919923, at *5 (E.D.N.C. May 29, 2012) (activities of daily living, including the leisure activities noted, may properly be relied upon by an ALJ in determining whether a claimant is disabled); *Roop v. Astrue*, No. 7:07-CV-214, 2008 WL 747078, at *10 (W.D. Va. Mar. 17, 2008) (finding that ALJ properly considered plaintiff's activities of daily living "in addition to the medical and opinion evidence of record, in order to determine the extent to which [plaintiff's] symptoms limited her capacity for work").

It is undisputed that the Plaintiff's activities of daily living include: folding clothes, getting his children ready for school, helping them with homework, supervising them and taking them to the beach. However, Plaintiff contends that the ALJ erred in referencing his grandmother's testimony about roller-skating. While the ALJ interpreted the testimony to mean that Plaintiff roller-skates, Plaintiff asserts that her testimony was that he participates in roller-skating activity, meaning he goes out with his children and supervises them while they (the

10

children) roller skate. Defendant maintain that this argument, which concerns only one of Plaintiff's activities of daily living, does not undermine the ALJ's findings with respect to his RFC. Indeed, even discounting the roller-skating, the ALJ properly considered the evidence of Plaintiff's activities of daily living, gathered from the record, third party statements and hearing testimony, in formulating his RFC. Without considering roller-skating, Plaintiff's other activities of daily living support the ALJ's determination regarding his RFC. Therefore, this argument is without merit.

### I. *Opinion evidence from Plaintiff's former employer*

Finally, Plaintiff contends that the ALJ failed to consider evidence offered by his father, Jeff Jones, who had employed Plaintiff in the past. Mr. Jones testified that Plaintiff's capacity was diminished following his surgeries; that he could not concentrate and got easily confused; that he was unable to read a measuring tape or plans; that he has no stamina; and that he never regained his motor or cognitive skills after his surgeries.

As noted by the Defendant, Plaintiff does not offer support for his contention that the opinion of a employer is due special weight. Moreover, despite Mr. Jones' testimony, the record contains contrary evidence. For example: Plaintiff testified that he could lift 30 pounds; he worked part-time in a job that required him to stock bags and clean tables; the record shows no evidence of motor deficits; a neurologist reported that Plaintiff made a full recover and that his speech and higher cortical functions were normal; and he earned his GED since the surgery. Such evidence discredits the testimony of Mr. Jones and supports a finding by the ALJ that it is entitled to lesser weight. Accordingly, Plaintiff's argument that Mr. Jones' testimony wsa not properly considered lacks merit.

11

## IV. CONCLUSION

Based on the foregoing, it is recommended that the Plaintiff's motion for judgment on the pleadings (DE 26) be denied, that the Defendant's motion for judgment on the pleadings (DE 28) be granted and that the final decision of the Commissioner be affirmed.

SO RECOMMENDED, this the 17th day of March, 2014.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE